UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY TODD KNUDSON,

        Plaintiff,

                         Case No. 14-CV-14854

vs.

                         HON. GEORGE CARAM STEEH

M/V AMERICAN SPIRIT, et al.,

        Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS [DOC. 60], DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT DISMISSING CERTAIN AFFIRMATIVE DEFENSES [DOC. 58], DENYING DEFENDANTS' MOTION TO BIFURCATE [DOC. 61] AND SUSTAINING IN PART AND OVERRULING IN PART DEFENDANTS' OBJECTIONS TO ORDER GRANTING MOTION TO COMPEL [DOC. 74]

This matter arises out of personal injuries allegedly sustained by

Plaintiff Jeffrey Todd Knudson in the service of his employer, Defendant

Liberty Steamship Company ("Liberty"), while serving aboard a Great

Lakes freighter owned by Defendant American Steamship Company

("American"). The case is before the court on defendants' motion for partial

judgment on the pleadings or partial summary judgment, plaintiff's motion

for partial summary judgment dismissing certain affirmative defenses,

defendants' motion to bifurcate, and defendants' objections to the magistrate judge's order granting plaintiff's motion to compel.

## FACTUAL BACKGROUND

Mr. Knudson was hired by Liberty as a permanent replacement worker in March of 2011 after LSC's negotiations with the union representing LSC's unlicensed seamen failed to reach a collective bargaining agreement. Knudson was a non-union employee.

On January 11, 2012, Mr. Knudson was serving as a General Vessel Utility, or deckhand, aboard M/V AMERICAN INTEGRITY. The vessel was approaching the locks at Sault Ste. Marie, Michigan and Knudson was tasked with going over the side of the vessel to the concrete dock at the locks below in order to moor the vessel as it passed through the locks. Vessel crew members were lowered from the deck of the vessel to the dock face below by way of a bosun's chair. One of the vessel's officers controls the crew member's descent in the bosun's chair by way of a line wrapped numerous times through a cleat on the deck of the vessel. This process is routine for a seaman and is performed every time any Great Lakes freighter passes through the locks, takes on fuel, or calls at nearly any dock. Mr. Knudson had performed this task on numerous occasions.

On the day in question, another deckhand, Todd Wilde, was put over the side of the vessel and lowered to the dock without incident. Mr. Knudson was then prepared to go over the side and join his crewmate. The vessel's first mate handling the line that day was Mr. Olney. During the procedure, one wrap of the line came free of the cleat, causing Knudson's descent to the dock, 30 to 35 feet below, to be more rapid than it should have been. The line is wrapped around the cleat several times, and in this instance one wrap came free. While Knudson landed on his feet on the dock face, he contends he was injured as a result of the incident.

Since the incident, Knudson has been restricted from further duty, and has been paid maintenance benefits and travel expenses. For the first two years American paid Knudson at the rate of $8 per day, which was the rate provided in Knudson's non-union, non-collectively bargained contract. Knudson contends that he was forced to live with his father, as he could not support himself on $8 per day. When Mr. Knudson complained that $8 was not enough to live on, defendants allegedly provided a Claims Arbitration Agreement ("CAA") for him to sign whereby he would acknowledge that defendants were obligated to pay $8 per day in maintenance and he would relinquish his right to a jury trial. Mr. Knudson refused to sign the CAA.

After two years, Mr. Knudson supplied defendants with proof of his shared living expenses and demanded a maintenance rate of $45 per day. Defendants ultimately agreed to pay $45 per day, retroactive to the date of the incident.  In all, defendants have paid Mr. Knudson maintenance benefits and travel expenses in excess of $96,000.  Defendants have also paid Knudson for all out-of-pocket medical expenses and medical bills, totaling over $89,000.

**I.     Defendants' Motion for Partial Judgment on the Pleadings or Alternatively Motion for Partial Summary Judgment**

**A.     Legal Standard**

**1.     Rule12(c) Judgment on the Pleadings**

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is reviewed under the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  See e.g., *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295-96 (6th Cir. 2008).  Rule 12(b)(6) allows the Court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. Under the Supreme Court's articulation of the Rule 12(b)(6) standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007), the Court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations

present plausible claims. "[N]aked assertions devoid of further factual enhancement" are insufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (*quoting Bell Atlantic*, 550 U.S. at 555) (citations and quotations omitted). Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." Id. (*citing Bell Atlantic*, 550 U.S. at 555).

### 2.    Rule 56 Summary Judgment

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair

and efficient administration of justice.  The procedure is not a disfavored

procedural shortcut.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986);

*see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir.

1995).

The standard for determining whether summary judgment is

appropriate is "'whether the evidence presents a sufficient disagreement to

require submission to a jury or whether it is so one-sided that one party

must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v.*

*Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (*quoting Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all

reasonable inferences must be construed in the light most favorable to the

non-moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,

475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001).  "[T]he

mere existence of *some* alleged factual dispute between the parties will not

defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no *genuine* issue of *material* fact."  *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original);

*see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907

(6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (*citing Anderson*, 477 U.S. at 252).

## B.    Jones Act

Under maritime law, the Jones Act authorizes seamen to maintain negligence actions for personal injury suffered in the course of employment. 46 U.S.C. § 688. It is the maritime plaintiff's employer who has a duty to provide a safe workplace. *Churchwell v. Bluegrass Marine, Inc.*, 444 F.3d 898, 907 (6th Cir. 2006). Recovery under the Jones Act is therefore only available to a seaman against the seaman's employer. Liberty is Knudson's employer, while American is the owner of the vessel but is not the employer. American moves for judgment as a matter of law

in its favor on Knudson's Jones Act claim.  In its reply brief, Knudson concedes it has no viable Jones Act claim against American.

However, plaintiff moves for leave to amend to plead a cause of action for negligence against American as a third party.  Plaintiff recently took the Rule 30(b)(6) deposition of American's chief operating officer, Mr. McMonagle, who revealed for the first time that the first mate who allegedly dropped plaintiff was an employee of American (not Liberty), subjecting American to vicarious liability for the actions of the first mate.  Plaintiff may amend his complaint as requested to allege negligence against American based on the fact that its employee was the one who was operating the bosun chair when plaintiff was dropped.

### C.    Unseaworthiness

A shipowner owes the seamen employed on its vessel an absolute, nondelegable duty to provide a seaworthy vessel.  *Harbin v. Interlake S.S. Co*, 570 F.2d 99, 103 (6th Cir. 1978).  Liberty moves for judgment as a matter of law on plaintiff's unseaworthiness claim for the reason that it is not the vessel owner.  Plaintiff concedes that it has no viable claim for unseaworthiness against Liberty.

Judgment as a matter of law is granted in favor of Liberty on plaintiff's unseaworthiness claim.

**D.    Punitive Damages**

**1.    Maintenance and Cure**

As a general rule, damages recoverable under the Jones Act or general maritime doctrine of unseaworthiness are limited to pecuniary losses only.  *See Miles v. Apex Marine Corp.*, 489 U.S. 19 (1990).  Almost thirty years after deciding *Miles*, the Supreme Court recognized an exception to the general rule and permitted the recovery of punitive damages for the willful failure to provide adequate maintenance and cure benefits under general maritime law.  *Atlantic Sounding Co., Inc. v. Townsend*, 557 U.S. 404 (2009).  The *Townsend* Court recognized that *Miles* dealt with a wrongful death action, and that Congress chose to limit the damages available for wrongful death actions under two statutes: the Jones Act and the Death on the High Seas Act.  In differentiating maintenance and cure benefits from wrongful death in the maritime context, the *Townsend* Court pointed out that the only reason a general federal cause of action for wrongful death on the high seas and in territorial waters existed was because of congressional action.

> As a result, to determine the remedies available under the common-law wrongful-death action, "an admiralty court should look primarily to these legislative enactments for policy guidance." *Miles*, 498 U.S. at 27, 111 S.Ct. 317.  It would have been illegitimate to create common-law remedies that exceeded those remedies statutorily available under the Jones

Act and DOHSA.  *See id.*, at 36, 111 S.Ct. 317 ("We will not
create, under our admiralty powers, a remedy ... that goes well
beyond the limits of Congress' ordered system of recovery for
seamen's injury and death").

*Townsend*, 557 U.S. at 420.

In holding that punitive damages are available for common-law claims

for maintenance and cure, *Townsend* started by observing that the Jones

Act created a statutory cause of action for negligence, but did not eliminate

pre-existing remedies available to seamen for the separate common-law

cause of action based on the right to maintenance and cure.  557 U.S. at

415.  The Court recognized the relevant difference between the situation

presented in *Miles*, statutory wrongful death, and cases involving

maintenance and cure as being that "both the general maritime cause of

action (maintenance and cure) and the remedy (punitive damages) were

well established before the passage of the Jones Act."  *Id.*  In addition, the

Jones Act does not address maintenance and cure or its remedy.

Therefore, it is possible to award punitive damages for common-law

maintenance and cure while adhering to the traditional understanding of

maritime actions and remedies, to which Congress has not directly spoken,

without violating the Jones Act.  *Id.* at 420-21.

The *Townsend* Court concluded that punitive damages are available

for the "willful or wanton failure to comply with the duty to pay maintenance

and cure." *Id.* at 422. "Maintenance and cure is designed to provide a seaman with food and lodging when he becomes sick or injured in the ship's service; and it extends during the period when he is incapacitated to do a seaman's work and continues until he reaches maximum medical recovery." *Vaughan v. Atkinson*, 369 U.S. 527, 531 (1962). The employer has an affirmative duty to promptly investigate any claim for maintenance and cure and resolve any doubts as to entitlement in favor of the seaman, promptly paying any amounts due. *See, e.g.*, *American Seafoods Co. v. Nowak*, 2002 WL 31262105 (W.D. Wa. 2002). General maritime law provides recovery for the delayed or improper provision of maintenance and cure. *Townsend*, 557 U.S. at 418.

In this case, plaintiff concedes that defendants eventually provided a proper amount of maintenance, but argues he is entitled to punitive damages because they wilfully and egregiously delayed making such payments. In support, plaintiff points out that when he told defendants that $8 a day was insufficient, they said that they were not able to pay him more unless he signed a Claims Arbitration Agreement, acknowledging that $8 a day was all defendants were required to pay and waiving his right to a jury trial.

Defendants respond that plaintiff is not entitled to maintenance in the first place, let alone to punitive damages, because he resided with his father and did not incur any living expenses. The cases cited by defendants in support of this proposition involve plaintiffs who were entitled to free room, board and medical attention at merchant marine hospitals, but decided to live with family and seek maintenance payments instead. *See Johnson v. United States*, 333 U.S. 46, 50 (1948). Merchant marine hospitals no longer exist, so these cases are no longer good law for the proposition cited by defendants.

Plaintiff is a 52 year old adult who claims he was forced to live with his father out of economic necessity. Plaintiff admits that he did not pay rent or utilities, but contends he had an agreement with his father to reimburse him for the support provided.

The court finds that there is an issue of fact whether defendants acted in bad faith with regard to the delay in paying maintenance benefits. Similarly, there is an issue of fact whether plaintiff had an arrangement with his father to pay him back for living expenses when he was able to do so.

## 2. Unseaworthiness

This court is bound by Sixth Circuit precedent which states that punitive damages are not available in general maritime unseaworthiness

actions.  *Miller v. American president Lines, Ltd.*, 989 F.2d 1450 (6th Cir. 1993).

### E.     Conclusion

For the reasons discussed above, defendants' motion for partial judgment on the pleadings is denied as to punitive damages for maintenance and cure and granted as to punitive damages for unseaworthiness.  Defendants' motion for summary judgment on punitive damages is denied because there is an issue of fact whether plaintiff incurred living expenses for which he would be entitled to recover maintenance benefits and whether defendants were willful in delaying their payment of reasonable maintenance.

## II.    Plaintiff's Motion for Partial Summary Judgment on Affirmative Defenses

Plaintiff submitted his First Discovery Requests, consisting of Interrogatories, Requests for Production and Requests for Admission on March 13, 2015.  Included in the discovery was the request to admit if there were no grounds for defendants' affirmative defenses, or to provide evidence in support.  Defendants deferred, asking to wait until discovery was complete.  Plaintiff filed this motion for partial summary judgment on the following affirmative defenses at the close of discovery.

### A. Comparative Negligence

Defendants stipulate to dismiss this affirmative defense.

### B. Act of Third Party

In their response brief to the pending motion for partial summary judgment, defendants assert for the first time that if plaintiff suffers from a traumatic brain injury, as he claims, then plaintiff's medical providers may be responsible for failing to timely diagnose and properly treat said brain injury.   Plaintiff responds that raising the argument that he is the victim of medical malpractice for the first time after discovery has closed is prejudicial.

The court denies plaintiff's motion for summary judgment on this affirmative defense without prejudice.  If plaintiff is claiming that defendants have committed some form of discovery abuse, this ruling would not preclude him from renewing the request as a stand-alone motion for the court to consider.  As it stands, however, the issue is too underdeveloped to provide a conclusive ruling.

### C. Failure to State a Claim

The court denies plaintiff's motion for summary judgment on this affirmative defense.  This affirmative defense is the basis of defendants' motion for judgment on the pleadings, which the court addresses above.

### D. Failure to Mitigate

At oral argument, plaintiff conceded that he should have been looking for work earlier, at the time he reached maximum medical improvement in 2016. Plaintiff's motion for summary judgment on this affirmative defense is denied.

### E. Prior Existing Medical Condition

Plaintiff's medical records, as well as the opinions of medical experts, include references to plaintiff's prior medical conditions, including: hypomania, attention deficit hyperactivity disorder, anxiety disorder, family problems, recurrent otitis media externa, alcohol and tobacco abuse, and chronic pain disorder due to unrelated emotional factors. Defendants argue that a jury should be able to determine whether the plaintiff's claimed injuries and damages stem from the negligence of defendants or whether they are the consequence of his preexisting medical conditions.

Defendants did not respond to any of plaintiff's discovery requests focused on the affirmative defense of prior medical conditions while discovery was still open. Defendants also have not tied any alleged preexisting medical condition to plaintiff's injuries sustained on the vessel.

It is not clear if plaintiff is seeking summary judgment based on discovery abuses under Rule 37, or on some other ground. The court will

consider such a motion if properly framed and fully developed.  As it stands, plaintiff's motion for partial summary judgment on this affirmative defense is denied without prejudice.

### F.  Act of God

Defendants stipulate to dismiss this affirmative defense.

### G. Unavoidable Accident

The Jones Act provides a seaman with a right of action against his employer for personal injuries sustained in the course of employment as a result of the employer's negligence, but not due to an accident.   There is an issue of fact in this case whether plaintiff suffered injuries due to defendants' negligence, or whether it was an accident.  With regard to whether the jury should be given an unavoidable accident instruction, the court can revisit the issue after it hears the evidence presented at trial. Plaintiff's motion is denied as to this affirmative defense.

### H.  Laches

Defendants stipulate to dismiss this affirmative defense.

### I.   Statute of Limitations

Defendants stipulate to dismiss this affirmative defense.

### J.  Defendants' Motion to Bifurcate

Defendants move the court to bifurcate plaintiff's punitive damages claim for purposes of trial until he first establishes liability and entitlement to compensatory damages.  Defendant alleges that plaintiff's punitive damages claim will not be ripe unless a jury determines plaintiff was entitled to maintenance.  If so, then plaintiff must establish that defendants willfully and wantonly disregarded their obligation to pay maintenance benefits in order to be entitled to punitive damages.

Federal Rule of Civil Procedure 42(b) controls bifurcation, permitting separate trials of one or more separate issues for convenience, to avoid prejudice or to expedite and economize.  The decision whether to try issues separately is within the sound discretion of the trial court.  *In re Bendectin Litigation*, 857 F.2d 290, 307 (6th Cir. 1988).

Plaintiff argues that the fact and expert witnesses on both sides will testify as to (1) the issue of liability, (2) the issues relating to the defendants' failure to investigate and timely pay reasonable maintenance, and (3) whether defendants' conduct rose to the level of culpability warranting an award of punitive damages.  Therefore, bifurcating the trial would cause these witnesses to testify twice as to the same facts and opinions, something Rule 42 seeks to avoid.  Plaintiff is a private party who

would be greatly inconvenienced by the extra time and expense required for two trials.  In addition, as a seaman, plaintiff is considered a ward of the court in admiralty, and his interests should be zealously protected by the court.  *Skowronek v. Am. Steamship Co.*, 505 F.3d 482, 491 (6th Cir. 2007).

Bifurcation would extend the length of the combined trials and cause evidence and testimony to be repeated because the same facts and opinions would be presented on the issue of whether defendants breached their duties and on the issue of whether those breaches were egregious so as to impose liability for punitive damages.

Defendants argue that if the jury hears evidence regarding punitive damages during the liability phase of trial, it may become emotionally inflamed and place either undue sympathy upon plaintiff or undue prejudice against defendants.  In addition, evidence of defendants' financial conditions or ability to pay will improperly shift the focus from the evidentiary burden for each cause of action.

The court is not convinced that defendants' concerns about inflaming the jury is valid.  On the other hand, the court does find that bifurcating the issues for trial will lead to inconvenience and added expense for both the parties and the court.  For these reasons, defendants' motion to bifurcate is denied.

**IV. Defendants' Objections to Order Granting Motion to Compel**

On January 4, 2017, plaintiff filed a motion to compel answers to discovery. Plaintiff sought production of (1) tax returns and other financial information from American and Liberty, (2) age composition and retirement information of all American and Liberty crew, both licensed officers and unlicensed seamen, and (3) training modules and videos showing the use of a fall protection device implemented as a subsequent remedial measure after the incident that is the subject of this litigation. Defendants opposed the motion. Judge Whalen held a hearing on January 26, 2017 and made the following rulings:

(1)     Tax Returns and Financial Information. The Magistrate Judge ordered production of all tax returns and financial information of both American and Liberty Steamship Companies from 2011 to the present.

(2)     Age Composition. The Magistrate Judge ordered production of age composition and retirement ages for all American and Liberty Steamship Company personnel, both licensed officers and unlicensed seamen, with the exception of any personnel serving as a captain.

(3) Training Modules and Videos. The Magistrate Judge, while recognizing that the information likely will be inadmissible at trial, nevertheless ordered the production of this information.

Defendants object to the decision of the Magistrate Judge and request that this court refuse to adopt the order and enter an order denying plaintiff's motion to compel.

With respect to nondispositive matters, this court reviews the Magistrate Judge's decisions for abuse of discretion.  Fed. R. Civ. P. 72(a).

### A.    Tax Returns and Financial Records

Defendants argue that plaintiff seeks tax returns and financial records for its punitive damages claim, but defendants do not believe plaintiff has a viable punitive damages claim.  The court rules today that plaintiff can seek punitive damages for its maintenance claim.  The court overrules defendants' objections to the order granting the motion to compel as to tax returns and financial records.

### B.    Age Composition of Defendants' Personnel

Plaintiff sought to compel information relating to the age composition of all of American and Liberty personnel, including all licensed officers and unlicensed crew members.  Both defendants object to providing such information because the request is overly broad and seeks information that

is neither relevant nor likely to lead to the discovery of admissible evidence. The Magistrate Judge acknowledged that the request was overly broad as phrased, and wondered "what could reasonably be deemed relevant in terms of showing positions or classifications that Mr. Knudson, without resort to speculation, could have obtained." (Hearing Transcript, p. 37). Nevertheless, the Magistrate Judge ordered the production of such information for all employees of both American and Liberty.

As plaintiff was not an American employee, the portion of the order requiring production of this information relating to American is erroneous as such information is immaterial to plaintiff's case. There is no suggestion that plaintiff was free to move between companies or had taken steps to secure a position with American. The production of information relating to American personnel is not relevant to the economic analysis of plaintiff's claimed wage loss.

Plaintiff's credentials allowed him to sail aboard a Liberty vessel in an entry-level position. He had no licensure allowing him to sail as an officer, union or non-union, on any vessel. Plaintiff has not provided any evidence that he was certified to serve as an able-bodied seaman. Therefore, any claim by plaintiff that he would have attained a higher rank is speculative at this point. Plaintiff is required to prove future wage loss with reasonable

certainty.  Defendants argue that the notion that plaintiff would have advanced beyond his entry-level position is wishful thinking and speculative, and therefore such a contention is inadmissible.

Plaintiff responds that he had a long career in commercial fishing before leaving to take care of his mother during a long and final illness.  He then set out to continue his career as a seaman and found employment with Liberty. Plaintiff contends he was advised when he was hired that his employment provided opportunities for advancement.  Because defendants argue that plaintiff would not have advanced beyond an entry level seaman for the remainder of his work life, plaintiff wants access to age composition information to argue his theory of the case.

Defendants have produced some information, which plaintiff admits addresses most of his needs in order to present his theory of the case.  In an effort to compromise, defendants state they are willing to produce the age composition of entry-level (the same classification as plaintiff) and able-bodied (the next highest classification than plaintiff) seamen for Liberty only.

Plaintiff's economist has requested that defendants provide the subsequent wages and earnings of the similarly situated, entry level employees of Liberty, as relevant to plaintiff's lost future earnings.  The

court finds that this is a reasonable compromise for plaintiff to be able to present his theory of the case without overburdening Liberty.

The court holds as follows:

1. The discovery at issue is limited to Liberty.

2. Age composition discovery is limited to entry-level and able-bodied Liberty seamen.

3. Subsequent wage and earnings of similarly situated entry level Liberty employees shall be produced.

## C.      Training Modules and Videos

Plaintiff sought, and the Magistrate Judge ordered, production of evidence of subsequent remedial measures adopted by American and Liberty following the incident.  Rule 407 of the Federal Rules of Evidence makes inadmissible any evidence of subsequent remedial measures to prove negligence, culpable conduct or a defect in a product or its design. Plaintiff acknowledges this, but argues that the videos would be useful in helping the jury understand the testimony of plaintiff's safety expert in explaining how a fall protection device could have been incorporated in the rigging of the bosun's chair.  Rule 407 allows a court to admit evidence of subsequent remedial measures "for another purpose, such as

impeachment or – if disputed – proving ownership, control, or the feasibility of precautionary measures."

Specifically, plaintiff seeks information generated by defendants in their investigation that led to changes to the rigging (this has apparently already been provided), and videos depicting the use of a bosun's chair with a fall protection device.  Again, plaintiff admits such evidence of subsequent remedial measures is not admissible to prove liability or culpability, but argues it is admissible to determine the cause of the accident and to explain why the wrong type of line was used on the bosun's chair involved in this case.  The video will illustrate how easily a fall protection device could have been incorporated into the rigging of the bosun's chair without interfering with the essential function or efficiency of the procedure.  Plaintiff states that the video can be shown to the jury without disclosing that the defendants actually made this change after the incident.  Plaintiff maintains that he should be given the information in discovery and the court can ultimately determine whether it is admissible at trial.

While admissibility for trial and discoverability are not the same thing, the object of the discovery request must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will

issue. *Kemper Ins. Cos. v. J.B. Hunt Logistics, Inc.*, 2003 WL 25672797

(N.D. Ga, June 17, 2003). Defendants told Magistrate Judge Whalen that

they admit incorporating a fall protection device into the rigging of the

bosun's chair is feasible. The court agrees with Magistrate Judge Whalen

that the learning modules and videos would be useful to the plaintiff's

expert for purposes of discovery, and overrules defendants' objection in

this regard. The court reserves ruling on whether the modules and videos

are admissible at trial.

Dated: August 30, 2017

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
August 30, 2017, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---