UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY TODD KNUDSON,

    Plaintiff,

vs.

Case No. 14-CV-14854

HON. GEORGE CARAM STEEH

M/V AMERICAN SPIRIT, et al.,

    Defendants.
_____/

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT REGARDING ENFORCEABILITY
OF CONTRACTUAL MAINTENANCE RATE [ECF NO. 133]

This matter arises out of personal injuries allegedly sustained by Plaintiff Jeffrey Todd Knudson in the service of his employer, defendant Liberty Steamship Company ("Liberty"), while serving aboard a Great Lakes freighter owned by defendant American Steamship Company ("American"). The case is before the court on plaintiff's motion for partial summary judgment regarding enforceability of the contractual maintenance rate of $8 per day. The court heard oral argument on plaintiff's motion on January 9, 2019. For the reasons given below, plaintiff's motion for partial summary judgment is GRANTED.

- 1 -

## FACTUAL BACKGROUND

Mr. Knudson was hired by Liberty as a permanent replacement worker on March 10, 2011 after Liberty's negotiations with the union representing Liberty's unlicensed seamen failed to reach a collective bargaining agreement. Knudson was not a member of any union. The terms of Knudson's employment were stated in a letter ("Employment Offer"), which referred to the terms and conditions contained in a document entitled "ASC American Steamship Company Liberty Steamship Company Implemented Terms and Conditions of Employment" ("Terms & Conditions of Employment"). In accepting the Employment Offer, Knudson acknowledged that Liberty explained the Terms & Conditions of Employment, that he understood such terms, and that he accepted the offer of employment. (Employment Offer, p. 2)

The Terms & Conditions of Employment is a 111 page document. It is a revised version of a previous collective bargaining agreement between United Steel Workers Local 5000 and defendant Liberty from 2006. ("2006 CBA") The 2006 CBA was a modified version of the 2004 CBA, which itself was a modified version of the 1999 CBA. Liberty and the union were not able to agree on a new collective bargaining agreement once the prior one

expired on August 1, 2009. The union and Liberty reached an impasse in their negotiations, and as a result, Liberty hired non-union permanent replacement workers, including plaintiff. The Terms & Conditions of Employment in Mr. Knudson's Employment Offer were purportedly based on the last offer Liberty made to the union.

Section 21 of the Terms & Conditions of Employment, addressing "Medical Examinations", provides:

> B. Maintenance and cure, when payable under maritime law, shall be paid, at the rate of Eight Dollars ($8.00) per day, upon application by the employee and submission of medical evidence of disability.

(Section 21, p. 78) By comparison, Section 9 of the Terms & Conditions of Employment, addressing "Allowances and Subsistence", provides that uninjured employees who are not provided with room and board on the vessel where they are working are paid $77.25 per day. (Section 9, p. 23)

On January 11, 2012, Mr. Knudson was serving as a General Vessel Utility, or deckhand, aboard M/V AMERICAN INTEGRITY. While performing his duties of employment, Knudson was accidentally dropped 30 feet in a lowering chair from the deck to the paved surface of a pier at the Soo Locks. One of the issues in this litigation is whether defendants

have fulfilled their legal obligation to pay Mr. Kundson a reasonable maintenance during his period of recuperation from his injuries.

After the incident, American paid Knudson at the rate of $8 per day, as provided in the Employment Offer. When Mr. Knudson complained that $8 was not enough to live on, defendants offered him a Claims Arbitration Agreement ("CAA") whereby defendants would increase his maintenance payment by $88.59 per day as an advance on an eventual settlement if Knudson relinquished his right to a jury trial. (Montante dep. pp. 72-75) Mr. Knudson refused to sign the CAA.

Knudson lived with his father both before and after his injury. After receiving the $8 per day maintenance and cure for two years, Knudson supplied defendants with proof of his shared living expenses and demanded a maintenance rate of $45 per day. Defendants agreed to pay $45 per day, retroactive to the date of the incident.

American's chief operating officer, Kevin McGonagle, acknowledged that the Terms & Conditions of Employment were not approved or agreed upon by any union representing Mr. Knudson. (McGonagle dep. pp. 33-34). He further stated that he did not believe a person could secure clean, safe and wholesome room and board for $8 a day (*id*. at p. 43). Mr.

McGonagle agreed that an allowance of $77.25 per day was a reasonable allowance for room and board (*id.* at pp. 36-37). Defendant's claims representative handling Knudson's claims, Laurie Montante, assumed that one could not secure room and board for $8 per day. (Montante dep. pp. 10, 15, 62, 63)

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to

require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations

or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (*citing Anderson*, 477 U.S. at 252).

## ANALYSIS

United States maritime law provides that the shipowner has the duty to provide "maintenance" to a seaman who becomes ill or injured while in the service of the ship. *Vaughan v. Atkinson*, 369 U.S. 527, 531 (1962). The right to maintenance includes food and lodging of the kind and quality which the seaman would receive aboard the ship. *Calmar S.S. Corp. v. Taylor*, 303 U.S. 525, 528 (1938). The duty to provide maintenance is thus imposed by common law and the right cannot be abrogated by contract. *Cortes v. Baltimore Insular Line*, 287 U.S. 367, 371 (1932); *Al-Zawkari v. American S.S. Co.*, 871 F.2d 585, 588 (6th Cir. 1989). The rate of maintenance, however, can be "defined by contract." *Al-Zawkari*, 871 F.2d at 588 (citing *Gardiner v. Sea-Land Service, Inc.*, 786 F.2d 943, 949 (9th Cir. 1986)).

All the maintenance rate cases relied on by the parties involve either union employees covered by CBAs, or non-union employees where there is no contractual maintenance rate. Therefore, when the opinions discuss a rate of maintenance being defined by contract, they are referring to *bona fide* collective bargaining agreements arrived at through genuine collective bargaining. See, e.g., *Skowronek v. American Steamship Co.*, 505 F.3d 482, 485-86 (6th Cir. 2007); *Gardiner*, 786 F.2d at 949.

In this case, Mr, Knudson was not a member of any union, nor was he represented by any union. Mr. Knudson was hired because Liberty was at an impasse with the union and the parties could not agree to the terms of a new collective bargaining agreement. Liberty implemented the Terms & Conditions of Employment, which was the last offer it made to the union, and unilaterally made them part of the Employment Offer it extended to Mr. Knudson. Consequently, Mr. Knudson is not a union employee with a CBA negotiated by the union on his behalf, nor is he a non-union employee operating without a contractual maintenance term. Rather, Mr. Knudson is a non-union employee with an employment contract that contains a maintenance term. That maintenance provision has its origin in a CBA that was previously negotiated between a union and shipowner in a bona fide,

genuine fashion.  Whether these circumstances are a sufficient basis to render the contract provision enforceable has not been the subject of any known caselaw to date.

The Ninth Circuit considered the issue of whether an $8 per day maintenance rate in a CBA was enforceable when challenged by union seamen who were covered by the CBA but sought a higher maintenance rate under general maritime law.  *Gardiner*, 786 F.2d at 945.  The Ninth Circuit held that general maritime law is not preempted by federal labor legislation regarding maintenance because "it does not appear that Congress has 'spoken directly' to the question of a seaman's traditional right to maintenance through the federal labor laws."  *Id*. at 948.  That is, the policies underlying federal labor laws, such as "the policy of enforcing a collective bargaining agreement in order to promote stability in labor-management relations, the policy that the terms of agreements are to be determined by the free play of economic forces, [and] the principle of self-government by employees and the democratic process of union representation", do not conflict with the common law requirement that a shipowner provide maintenance to a seaman who becomes ill or injured while in the service of the ship.  *Id*. at 947-48 (internal citations omitted).

The *Gardiner* court nevertheless concluded that "the broad polices which undergrid the labor laws, as well as the nature of the collective bargaining process, require . . . that the maintenance rate expressed in the collective bargaining agreement be enforced." *Id.* Where a CBA includes an explicit rate of maintenance as one of its terms, and there is no reason to conclude that the rate was not a consequence of the normal give and take of collective bargaining, that term will be enforceable. *Id.* at 949. Where there is no allegation that the collective bargaining process was unfair or inadequate, the court cannot consider the rate of maintenance, or any other term of the CBA, in isolation. The court recognized that the CBA must be considered as a whole because the process of negotiating benefits is a "give and take" process and the "determination of its adequacy in relation to the whole scheme of benefits has already been made by the union and the seamen who voted for that contract." *Id.*

It is even possible that an expired collective bargaining agreement will still control the maintenance rate as to union seamen so long as the employer still largely honors its terms. In *Macedo v. F/V Paul & Michelle*, 868 F.2d 519 (1st Cir. 1989), the district court found that the contractual maintenance rate was no longer enforceable solely because the CBA had

expired. *Id.* at 521. The Court of Appeals held that the district court's view was "oversimplistic." *Id.* The court recognized that the terms of the CBA were interrelated, with the maintenance rate being just one part of a comprehensive wage and benefit agreement. Where the employer still followed the general interrelated terms, the maintenance rate set by the expired CBA was found to be enforceable.

The preceding discussion involves seamen who are represented by unions that negotiated and agreed to a rate of maintenance on the seamen's behalf. In such instances courts presume that the maintenance rate was arrived at by negotiation. "[T]he burden properly rests with the plaintiff to produce evidence that a bona fide negotiation did not take place, that the CBA was unfair, or that he was not adequately represented." *Skowronek*, 505 F.3d at 486 (quoting *Al-Zawkari*, 871 F.2d at 588). Absent a finding of an unfair collective bargaining process, courts decline to view one term in isolation and instead view all terms as a union-negotiated package of compensation and benefits that should be accorded deference.

Several circuit courts have considered whether $8 per day in maintenance is adequate for *nonunion* seamen. The Second Circuit held that a seaman makes out prima facie case of a reasonable maintenance

rate by providing proof of his actual living expenses necessarily incurred during his recovery period. *Incandela v. American Dredging Co.*, 659 F.2d 11, 14 (2d Cir. 1981). The employer may introduce rebuttal evidence showing that the seaman's expenditures were excessive. *Id.* Other circuit courts have adopted the burden-shifting test, further discussing how the district court should calculate reasonable maintenance:

> In determining the reasonable costs of food and lodging, the court may consider evidence in the form of the seaman's actual costs, evidence of reasonable costs in the locality or region, union contracts stipulating a rate of maintenance or per diem payments for shoreside food or lodging while in the service of a vessel, and maintenance rates awarded in other cases for seamen in the same region.

*Barnes v. Sea Hawaii Rafting, LLC*, 889 F.3d 517, 540 (9th Cir. 2018) (quoting *Hall v. Noble Drilling (U.S.) Inc.*, 242 F.3d 582, 590 (5th Cir. 2001)[1]).

---

[1] The Fifth Circuit establishing a three step test to determine a maintenance award: First, the court estimates the seaman's actual costs of food and lodging and the reasonable cost in the locality of the plaintiff. Second, the court compares the two figures. The general rule is that seamen are entitled to maintenance in the amount of their actual expenses up to the reasonable amount for their locality. Third, if the court concludes that plaintiff's actual expenses were inadequate to provide him with reasonable food and lodging, the plaintiff is entitled to the reasonable cost of food and lodging. This insures that the plaintiff's inability to pay for food and lodging in the absence of maintenance payments does not prevent him from recovering enough to afford himself reasonable sustenance and shelter. *Hall*, 242 F.3d at 590.

This case does not involve a union seaman who himself was represented in bona fide negotiations with his employer. Furthermore, although the contract terms came from the last offer the employer made to the union, the union did not accept those terms. As such, labor law policies which promote stability in labor-management relations and self-government by employees are not furthered by enforcing the maintenance term contained in the Terms and Conditions of Employment that make up Mr. Knudson's Employment Offer. Of course, Mr. Knudson accepted the Terms and Conditions of Employment, but there is no presumption that the maintenance rate was arrived at by bona fide negotiation.

What this case does involve is a non-union seaman working under a contract that included a maintenance rate of $8 per day. As discussed above, general maritime law provides that parties may agree to a rate of maintenance, but that rate must be reasonable. The burden shifting test employed by the Second, Fifth and Ninth Circuits provides the court with a method for determining a reasonable rate of maintenance when a seaman is not covered under a collective bargaining act. The burden is initially on the seaman to document his actual living expenses reasonably and

necessarily incurred during his convalescence, or to provide other evidence demonstrating reasonable costs in the location at issue.

In this case we know that Mr. Knudson informed his employer that $8 a day was insufficient maintenance and that he was offered a daily rate of $96.59 on the condition that he waive his right to a jury trial. We also know that Knudson's contract provided that uninjured seamen received $77.25 a day for room and board when not provided on the vessel. After receiving $8 a day for two years, Mr. Knudson supplied defendants with evidence showing that his living expenses were $45 a day and defendants agreed to pay that amount, retroactive to the date of his injury. Finally, plaintiff offers the testimony of American's chief operating officer and a claim's representative who both agreed that a person could not secure room and board for $8 a day.

Mr. Knudson has met his burden of proving his prima facie case that $8 a day is an unreasonable rate of maintenance and that $45 a day is reasonable. Defendants have not submitted any evidence to rebut this proposition. Therefore, the court finds that the $8 per day maintenance rate stated in the Terms & Conditions of Employment is unenforceable as to Mr. Knudson.

At oral argument plaintiff's counsel agreed that once his maintenance payment was increased to $45 a day, he was no longer entitled to seek punitive damages based on the payment of unreasonable maintenance under general maritime law. Therefore, the potential availability of punitive damages is limited to the two-year period beginning immediately following plaintiff's accident and ending when defendants began paying plaintiff $45 a day.

## CONCLUSION

For the reasons stated above, plaintiff's motion for partial summary judgment regarding enforceability of the contractual maintenance rate is GRANTED.

Dated: January 17, 2019

> s/George Caram Steeh
> GEORGE CARAM STEEH
> UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on January 17, 2019, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---